UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
FRIARS NATIONAL ASSOCIATION,

                Plaintiff,                04 Civ. 4520 (PKC)

    -against-

                                  MEMORANDUM
                                  <u>AND ORDER</u>

9900 SANTA MONICA, INC. d/b/a THE
FRIARS OF BEVERLY HILLS and DARREN
SCHAEFFER,

                Respondent.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        The Complaint in this action was filed on June 16, 2004. Plaintiff Friars National Association ("Friars National") alleges that defendants 9900 Santa Monica, Inc. ("9900SM"), doing business as The Friars of Beverly Hills ("Beverly Hills Friars"), and its chief executive officer and president Darren Schaeffer are liable for trademark infringement under sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(a), 1125(a), trademark dilution, 15 U.S.C. §§ 1125(c), violation of New York General Business Law § 368-d, and common law unfair competition claims. (Complaint ¶¶ 20-53)

        Shortly after this action was filed, defendants expressed an intention to move pursuant to Rule 12(b)(2), Fed. R. Civ. P., to dismiss the Complaint for lack of personal jurisdiction, or, in the alternative, to transfer this action to the Central District of California pursuant to 28 U.S.C. § 1631 or 1404(a). At a pretrial conference held on September 2, 2004, I granted the parties leave to conduct discovery during a 45-day

period, limited to the factual basis for personal jurisdiction over the defendants. Following the close of that period, defendants filed their motion to dismiss for lack of personal jurisdiction. For the reasons explained below, I grant the defendants' motion.

1. Background

Friars National is a New York membership corporation, with its principal place of business at 57 E. 55th St., New York, NY. (Complaint ¶ 2) It was formed in 1904, and designates itself with the mark "Friars Club." (Complaint ¶ 7) George M. Cohan, Milton Berle, Ed Sullivan, and Frank Sinatra all have served as its chairmen, or "Abbots." (Complaint ¶ 8) Friars National hosts events related to the entertainment industry, and perhaps is best known for its gala "roasts." (Complaint ¶¶ 7, 9) The Complaint describes the roasts as "ritualistic dinners" in which a celebrity is "'honored' with loving ridicule by his or her high-profile peers." (Complaint ¶ 9) For example, Friars National points out, in October 2004, a roast held for real estate developer and television personality Donald Trump received national press coverage. (Brickell Aff. Ex. B) Trump was lampooned by speakers including Regis Phillbin, Artie Lange and Al Sharpton. (Brickell Aff. Ex. B)

Friars National contends that it owns federal registration for the "Friars Club" mark for fundraising, health club purposes, and other services. (Complaint ¶ 11) It alleges that defendants Schaeffer and 9900SM infringed on its registered mark by hosting celebrity roasts and soliciting customers. (Complaint ¶¶ 14-18, 23, 32) The plaintiff alleges that the defendants' actions will result in consumer confusion. (Complaint ¶¶ 25, 34)

Defendant 9900SM is a California corporation with its principal place of

business in Beverly Hills, California. (Complaint ¶ 3) 9900SM acquired the assets of the Beverly Hills Friars pursuant to an Asset Purchase Agreement apparently executed in February 2004. (SM 0001-0030, attached at Brickell Aff. Ex. E) 9900SM does not appear to be organized as a "membership corporation." The Beverly Hills Friars operates a restaurant and sometimes invites club members to holiday brunches.[1] (Brickell Aff. Ex. H) It also hosts comedy-themed events, including a charity benefit called "Rock Comedy" that featured appearances by comics Tommy Davidson and Bobby Lee, and a taping for a prime-time television program, "Last Comic Standing." (Brickell Aff. Exs. H, I) These events take place at defendants' facilities in Beverly Hills, California. (Brickell Aff. Exs. H, I) According to the Complaint, Schaeffer "is a conscious, dominant and active force behind the wrongful acts" of 9900SM. (Complaint ¶ 4) The Complaint alleges that Schaeffer oversaw infringing activities for his own individual gain and benefit. (Complaint ¶ 4)

The plaintiff asserts that venue in this District is proper because "a substantial portion of the Defendants' unlawful activities" were committed or had an impact in New York. (Complaint ¶ 6) In their motion papers, defendants contend that 9900SM has no systematic or continuous presence in New York. It asserts that it has never conducted business in the state of New York, never maintained a bank account or facilities in New York, never retained New York agents, never advertised or solicited business in New York, and that defendant Darren Schaeffer has not been in the state of New York at any time during the past five years. (Schaeffer Aff. ¶¶ 3, 5-6)

"On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal

---

[1] The rights and privileges accorded to members of the Beverly Hills Friars are not altogether clear, although members apparently pay initiation fees and membership dues. (SM 0052, attached at Brickell Aff. Ex. H)

3

jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litigation, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam). In support of its argument that this Court possesses personal jurisdiction over defendants, the plaintiff cites a list of names produced during jurisdictional discovery. (SM0059, attached at Brickell Aff. Ex. G) The names appear in an e-mail with the subject heading "NY Friar Information.xls." The list contains first names, with last names redacted, along with membership numbers and dates of recent activity. According to the deposition testimony of Marc Glantz, who is identified elsewhere as the controller of 9900SM, the list identifies persons affiliated with the Beverly Hills Friars who maintained mailing addresses in New York. (Glantz Dep. at 17-21) The list was created in response to a document request in this litigation. (Glantz Dep. at 21) Glantz testified that three of the 28 individuals listed were members of the Beverly Hills Friars, while acknowledging that all 28 on the list received monthly correspondence from the Beverly Hills Friars. (Glantz Dep. at 17-19; see also Schaeffer Aff. ¶ 8) Of the 25 who were not formal members, Glantz testified that they were "people who had addresses in our or [sic] member software with addresses in New York state for billing purposes." (Glantz Dep. at 17) Mailings received by these individuals included invitations to holiday brunches, and an invitation to a taping for "Last Comic Standing," a television program broadcast by NBC. (Attached at Brickell Aff. Exs. H, I) All of these events were located in California. As far as the record on this motion shows, the Beverly Hills Friars only renders services – meals and comedy shows – in California. It ships no products of any kind into New York,.

        To determine whether, at the time of service of process, there was a basis

for personal jurisdiction, the Court first looks to the forum state's law. Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). Pursuant to CPLR 301, a New York court may exercise jurisdiction over persons and corporations present and doing business in New York. Plaintiff does not argue that jurisdiction exists under section 301, and looks instead to New York's long-arm statute, CPLR 302. CPLR 302(a) provides in relevant part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act . . . .

(McKinney's 2001). Plaintiff contends that this Court has personal jurisdiction over the defendants pursuant to both CPLR 302(a)(1) and (2).

2. Plaintiff Has Not Established Personal Jurisdiction Under CPLR 302(a)(1)

To maintain personal jurisdiction over a nondomiciliary defendant under CPLR 302(a)(1), the defendant must transact business in New York, and the claim against the defendant must arise out of that business activity. Agency Rent A Car Systems, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996). As set forth by the Court of Appeals in McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981), a suit against a nondomiciliary arises under CPLR 302(a)(1) if there exists an "articulable nexus" between the transacted business and the cause of action upon which suit is brought. "[O]ne transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between

the transaction and the claim asserted." Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 522 N.E.2d 40, 43, 527 N.Y.S.2d 195, 198-99 (1988). Section 302(a)(1) establishes personal jurisdiction over nonresidents who have "purposefully availed [themselves] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws . . . ." Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 18, 308 N.Y.S.2d 337, 341, 256 N.E.2d 506, 508-09 (1970) (quotation marks omitted).

In addition to satisfying CPLR 302(a)(1), the exercise of jurisdiction must satisfy due process. Due process "requires that a defendant have enough minimum contacts with the forum state so that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" PDK Labs., Inc. v. Friedlander, 103 F.3d 1105, 1110 (2d Cir. 1997) (quoting International Shoe v. Washington, 326 U.S. 310, 316 (1945)). Due process is satisfied if the defendants purposely and sufficiently availed themselves of the privileges of conducting business in New York, so that it would be reasonable to anticipate being subject to suit in New York. Id. at 1110-11.

Because a motion to dismiss pursuant to Rule 12(b)(2) based on lack of personal jurisdiction is "inherently a matter requiring the resolution of fact issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion." St. Paul Fire & Marine Ins. Co. v. Eliahu Ins. Co., 1997 WL 357989, at *1 (S.D.N.Y. June 26, 1997) (quotation marks omitted), aff'd 152 F.3d 920 (2d Cir. 1998) (table). No party has argued that an evidentiary hearing is needed to resolve this motion. Where "the parties have conducted extensive discovery regarding the defendants' contacts with the forum state, but no evidentiary hearing has been held – the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing

motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999) (quotation marks omitted; alteration in original).

The plaintiff has failed to come forth with facts sufficient to establish this Court's personal jurisdiction over the defendants pursuant to CPLR 302(a)(1). True, there is authority for the proposition that extensive use of mail, telephone calls, faxes, and wire transfers by a defendant can predicate personal jurisdiction. However, the case law that plaintiff cites for this proposition found personal jurisdiction premised contacts notably more extensive than those here. Parke-Bernet Galleries, Inc., found that New York had personal jurisdiction over a Californian who participated in a New York-located art auction via telephone. The California defendant wrote the New York auctioneer with bidding instructions, and participated in the auction via an open telephone line. 26 N.Y.2d at 15-16, 308 N.Y.S.2d at 338-39. The Court of Appeals held that the California defendant "projected himself into the auction room" to compete with those physically present. Id., 26 N.Y.2d at 18, 308 N.Y.S.2d at 340. State by Lefkowitz v. Colorado State Christian College of Church of Inner Power, Inc., 76 Misc. 2d 50, 51, 346 N.Y.S.2d 482, 484 (N.Y. Sup. Ct. 1973), found that a Colorado defendant was "busily engaged in offering for sale and selling Ph.D degrees in sundry and sorted areas of specialization." Defendant solicited New York residents listed in publications such as "Who's Who of American Women." Id. The mailings consisted of a letter, an application, and a brochure, and were mailed to the New York public over a five-month period. Id., 76 Misc. 2d at 52, 346 N.Y.S.2d at 485. At least one New Yorker received

7

an honorary doctorate degree.  Id.  These mailings were sufficient to establish personal jurisdiction over the defendant under New York law.  Id.

Defendant 9900SM provided services only within the state of California, and the New York addresses belonged only to persons who had relationships with the Beverly Hills Friars based on activities in California.  (Schaeffer Aff. ¶ 8)  According to Schaeffer, "9900SM has not ever added any members with a mailing address in the State of New York," and the mailing recipients with New York addresses had a prior relationship with the Beverly Hills Friars.  (Schaeffer Aff. ¶ 8)  The Beverly Hills Friars has hosted no events in New York, never had employees or agents domiciled in New York, never contracted with any New Yorker, never maintained facilities or telephone listings in New York, never had a New York bank account, never advertised in New York, and never conducted meetings or solicited business in New York.  (Schaeffer Aff. ¶¶ 5-6)  The plaintiff does not offer facts that dispute these statements.

As New York law makes plain, the "mere solicitation of business within the state does not constitute the transaction of business within the state" absent some other New York-directed activities.  O'Brien v. Hackensack Univ. Medical Ctr., 305 A.D.2d 199, 201, 760 N.Y.S.2d 425, 427 (1st Dep't 2003); see also Davidson Extrusions, Inc. v. Touche Ross & Co., 131 A.D.2d 421, 423-24, 516 N.Y.S.2d 230, 232 (2d Dep't 1987) (placement of advertisement in national publication insufficient to constitute transaction of business within state).  The defendants' mailings to self-selected New Yorkers already affiliated with the Beverly Hills Friars are insufficient to constitute business transactions related to the allegedly infringing conduct.  McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981) (requiring "an

articulable nexus between the business transacted and the cause of action sued upon . . . ."); Armouth Int'l, Inc. v. Haband Co., 277 A.D.2d 189, 189, 715 N.Y.S.2d 438, 439 (2d Dep't 2000) (requiring a "substantial relationship" between a defendant's New York activity and the plaintiff's cause of action).

With exception of a television broadcast, which I address below, the services offered by the Beverly Hills Friars are available only to those physically present in California. Defendants' isolated and limited correspondence to New York addresses, all of which belonged to individuals who maintained a relationship with the Beverly Hills Friars independent of the mailings at issue here, is insufficient to establish jurisdiction under CPLR 302(a)(1).

3. Plaintiff Has Not Established Personal Jurisdiction Under CPLR 302(a)(2)

Plaintiff argues that, in the alternative, this Court has personal jurisdiction over the defendants because they committed a tortious act within New York state. CPLR 302(a)(2). Friars National argues that the Beverly Hills Friars' participation in the taping of an episode for the television program "Last Comic Standing," which was broadcast in New York by an NBC television station, is sufficient to establish personal jurisdiction. The Beverly Hills Friars invited its club members, including those with New York addresses, "to a Special Roast Event that will be taped for inclusion on an NBC primetime show." (SM 0046, attached at Brickell Aff. Ex. I)

On March 10, 2004, the Beverly Hills Friars executed a contract with NBC Studios, Inc., an entity with an address at 330 Bob Hope Drive in Burbank, California. (SM 0031) The contract, among other things, allowed up to 110 of the club's members to attend the taping of a comic roast. (SM 0031, attached at Brickell Aff. Ex. J)

9

The contract stated that any disputes arising under it must be arbitrated in Los Angeles County, California, and construed according to California law. (SM 0034) "Last Comic Standing" apparently was taped on March 13, 2004, at the Beverly Hills Friars facility in Beverly Hills, California. (SM 0046, attached at Brickell Aff. Ex. I) In a letter dated April 10, 2004, defendant Schaeffer wrote to members stating "that we had a highly successful comedy special produced by NBC and that parts of the show will be aired shortly on primetime NBC." (SM 0040, attached at Brickell Aff. Ex. I) Plaintiff also directs the Court to internet reviews of "Last Comic Standing," which, it claims, shows public confusion over whether the program was filmed in cooperation with plaintiff Friars National. (attached at Brickell Aff. Ex. K) Plaintiff does not explicitly delineate the basis of jurisdiction over Schaeffer from jurisdiction over 9900SM, though presumably jurisdiction over Schaeffer is predicated upon his April 10 letter and his role as CEO and owner of 9900SM.

To be subject to personal jurisdiction under CPLR 302(a)(2), "[o]nly a single tortious act is required to trigger the provision, and no other local activities are required." Carell v. Shubert Organization, Inc., 104 F. Supp. 2d 236, 269 (S.D.N.Y. 2000) (citing Pilates, Inc. v. Pilates Institute, Inc., 891 F. Supp. 175, 180 (S.D.N.Y. 1995)). Trademark infringement is a tort. See Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 218 (1st Cir. 1989). An infringing product need only be offered for sale to New York residents in order for a New York court to attain personal jurisdiction. GTFM, Inc. v. Fubutu Home & Educational Media, Inc., 2003 WL 22439791, at *3 (S.D.N.Y. Oct. 27, 2003). That is because in a trademark infringement action, the wrong takes place where the "passing off" occurs, not where the infringing items are located

10

physically. Vanity Fair Mills, Inc. v. T. Easton Co., 234 F.2d 633, 639 (2d Cir.), cert. denied, 352 U.S. 871 (1956). Actual confusion as to the underlying marks need not be shown at the Rule 12(b)(2) stage. GTFM, 2003 WL 22439791, at *3.

In Bensusan Restaurant Corp. v. King, 126 F.3d 25 (2d Cir. 1997), the Second Circuit affirmed the district court's dismissal of a trademark action brought under Rule 12(b)(2). A New York plaintiff describing itself as the creator of New York's The Blue Note jazz club sued a Missouri defendant who opened a club, also called The Blue Note, in Columbia, Missouri. Id. at 26. Plaintiff had registered a trademark for The Blue Note. Id. In 1996, after refusing to comply with a prior cease-and-desist letter issued by the plaintiff, defendant arranged for the posting of a web site that promoted the Blue Note located in Columbia, Missouri. Id. at 26-27. Plaintiff commenced an action asserting Lanham Act claims and common-law unfair competition arising out of the defendant's web site. Id. at 27.

Relying on the holding of the New York Court of Appeals in Feathers v. McLucas, 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), the Second Circuit held that there was an insufficient basis to establish personal jurisdiction under CPLR 302(a)(2). 126 F.3d at 28. The Second Circuit proceeded to note that "[t]he official Practice Commentary to CPLR § 302 explains that 'if a New Jersey domiciliary were to lob a bazooka shell across the Hudson River at Grant's tomb, Feathers would appear to bar the New York courts from asserting personal jurisdiction over the New Jersey domiciliary in an action by an injured New York plaintiff.' C302:17." Id. Bensusan concluded that the defendant's actions were insufficient to establish personal jurisdiction:

> The acts giving rise to Bensusan's lawsuit – including the authorization and creation of [defendant's] web site, the use of the words "Blue Note" and the Blue Note logo on the site, and the creation of a hyperlink to Bensusan's web site – were performed by persons physically present in Missouri and not in New York. Even if Bensusan suffered injury in New York, that does not establish a tortious act in the state of New York within the meaning of § 302(a)(2).

Id. at 29.[2] See also Carrell, 104 F. Supp. 2d at 269 (no personal jurisdiction under section 302(a)(2) when defendants were credited in an allegedly infringing video sold in New York); cf. Burger King v. Rudzewicz, 471 U.S. 462, 469 n.11 (1985) (noting in dictum the possible due process barriers of asserting jurisdiction over out-of-state trademark infringement activity); CBS, Inc. v. Snyder, 798 F. Supp. 1019, 1028 (S.D.N.Y. 1992) (under CPLR 302(a)(1), New York had no personal jurisdiction over a television station in Washington, D.C., because even though a video clip produced by defendant aired in New York, defendant did not directly broadcast in New York).

As with Bensusan, the underlying, allegedly infringing conduct in this case arose entirely in a state other than New York. The Beverly Hills Friars selected its mark, the use of the words "Friars Club," entered into its contract with NBC, and filmed the allegedly injurious broadcast entirely in California. In contrast to instances in which courts have found personal jurisdiction over a nondomiciliary defendant in a trademark action, see, e.g., Pilates, Inc., 891 F. Supp. at 179-80, there is no evidence supporting a conclusion that defendants engaged in the sales of infringing goods in New York. The defendants provide services specific to a California location, such as holiday brunches. Those services are inherently local in nature, much as the conduct of the defendant jazz club in Bensusan was Missouri-based.

---

[2] Although the plaintiff alleges the existence of Beverly Hills Friars domain names (Complaint ¶ 16), it does not rely on the defendants' internet activity as a basis for personal jurisdiction.

I reject the plaintiff's contention that NBC's broadcast of "Last Comic Standing" establishes personal jurisdiction. Plaintiff relies on the rationale set forth in German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co., 569 F. Supp. 1529, 1530-33 (S.D.N.Y. 1983), a case in which the New York plaintiff produced a television program called "Soccer Made in Germany." Id. at 1530-31. The defendant, an Oregon corporation that had no presence in New York, began to market a television program titled "Soccer From Germany." Id. at 1531. Both parties marketed their respective programs to affiliate stations of the Public Broadcasting System ("PBS"). Id. at 1531-32. German Educational Television found personal jurisdiction over the Oregon defendants based on a fact-specific analysis of how public television programs are marketed to member stations. Id. at 1531. PBS operated an annual marketplace for public broadcasting stations, functioning as a liaison between stations producing content and those seeking to buy and air programs. Id. Under the scheme, PBS remained the actual owner of all programming. Id. Alternatively, offers could be directly made to each station. Id. at 1531-32. The district court concluded that, based on the method and manner by which the Oregon defendant marketed its program the allegedly infringing program, it had offered the program for sale in New York. Id. at 1532.

German Educational Television arose in a factual context distinct from the current case. The Beverly Hills Friars did not market "Last Comic Standing" to broadcast outlets in New York. Once it signed the contract with NBC Studios, Inc., the defendant's role in the promotion of "Last Comic Standing" was, as far as the record before me shows, limited or non-existent. In Bensusan, the defendant initiated the allegedly infringing Blue Note website, making it widely available on the internet for the

13

purpose of soliciting business, even after he received and ignored a cease-and-desist letter from the New York plaintiff. 126 F.3d at 26-27. Still, no jurisdiction was found. There is no argument in this case that "Last Comic Standing" was broadcast with the purpose or effect of building the Beverly Hills Friars' customer base in New York. I therefore conclude that the "passing off" that occurred in German Educational Television arose within the PBS programming market, and is not analogous to the NBC broadcast in this case.

Another case cited by the plaintiff, Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 566-67 (S.D.N.Y. 2000), found jurisdiction under CPLR 302(a)(2) when the defendant "sent direct mailings to New York residents directed at soliciting their business and displaying the allegedly infringing mark." The mailings here were not attempts to solicit new business, but rather, notified persons with prior relationships to the defendant of events that the defendant was hosting in California. Similarly, there is no contention that defendants solicited business in online chatrooms, an activity that militated toward a finding of jurisdiction in Citigroup. Id. at 567. Miller Brewing Co. v. Carling O'Keefe Breweries of Canada, Ltd., 452 F. Supp. 429, 443-43, 446-49 (W.D.N.Y. 1978), also cited by the plaintiff, is a summary judgment ruling that addresses the merits of a Lanham Act dispute. It does not discuss CPLR 302(a)(2) or the New York courts' application of the long-arm statute. Moreover, to the extent it found personal jurisdiction, it predates Bensusan by nearly 20 years. Cf. Davidson, 131 A.D.2d at 423-24, 516 N.Y.S.2d at 232 (advertising in national magazine does not establish jurisdiction under CPLR 302(a)(1)).

## CONCLUSION

Because this Court lacks personal jurisdiction over defendants 9900 Santa Monica, Inc. and Darren Schaeffer, their motion pursuant to Rule 12(b)(2) is GRANTED. The Clerk of Court is directed to enter judgment dismissing this case without prejudice.

SO ORDERED.

Dated: New York, New York
May 2, 2005

P. Kevin Castel
United States District Judge